[No. 43530.   En Banc.   June 26, 1975.]

FLORENCE J. STEELE *et al, Respondents,* v. THE STATE OF
WASHINGTON, *Appellant.*

586

*Slade Gorton, Attorney General,* and *D. Roger Reed, Senior Assistant,* for appellant.

*Hamblen, Gilbert & Brooke, P.S.,* and *Wm. F. Nielsen,* for respondents.

FINLEY, J.—This case involves a challenge to a civil investigative demand served upon respondents' employment agency by the Attorney General pursuant to RCW 19.86.110(1)—a provision in the Consumer Protection Act. Respondents filed a petition in Spokane County Superior Court pursuant to RCW 19.86.110(7) to set aside the civil investigative demand. The superior court ruled that employment agencies are exempt from the Consumer Protection Act and, accordingly, set aside the civil investigative demand. The Attorney General appeals. We reverse the trial court.

The facts are not in dispute. The Attorney General served the civil investigative demand upon respondents because it believed that the employment agency was committing unfair and deceptive practices in violation of the Consumer Protection Act. No civil lawsuit had been filed by the Attorney General prior to the service of the civil inves-

tigative demand. The civil investigative demand required production of numerous records for inspection and copying by the Attorney General. The records to be furnished basically related to services rendered to applicants for employment; the manner of payment agreed upon by the applicant and respondent; training materials and manuals supplied by the franchisor to the respondent; applications for employment that had been placed in the inactive file in the past year; refunds to applicants or fee adjustments; certain pleadings filed in courts of record of this state in which respondent was a party; certain contracts between respondent and lending or financial institutions; and certain advertisements for employment placed by the agency in local newspapers.

Respondents' challenge to the instant civil investigative demand raises essentially two issues for our determination: (1) whether employment agencies are exempt from the provisions of the Consumer Protection Act; (2) whether the civil investigative demand constitutes an unreasonable search and seizure in violation of the Fourth Amendment.

Resolution of the first issue, *i.e.*, whether employment agencies are exempt from the Consumer Protection Act, is solely a matter of statutory construction which turns upon the relationship between the exemption provision in the Consumer Protection Act and a subsequently enacted provision in The Employment Agency Act.

At the time the superior court rendered its decision in this matter, the exemption provision of the Consumer Protection Act provided in part:[1]

---

[1] After the superior court rendered its ruling, the above provision was amended to read, in part:

*Nothing in this chapter shall apply to* actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or actions or *transactions permitted by any other regulatory body* or officer acting under statutory authority of this state or the United States: . . . *Provided, further,* That actions or transactions specifically permitted within the statutory authority granted to

> *Nothing in this chapter shall apply to actions* or transactions otherwise *permitted, prohibited or regulated* under laws administered *by* the insurance commissioner of this state, the Washington public service commission, the federal power commission *or any other regulatory body* or officer acting under statutory authority of this state or the United States: . . .

(Italics ours.) Laws of 1967, ch. 147, § 1, p. 710.

The Employment Agency Act regulates employment agencies. In addition, in pertinent part regarding the statutory problem in this appeal, it provides:

> The director may refer such evidence as may be available to him concerning violations of this chapter or of any rule or regulation adopted hereunder to the *attorney general* or the prosecuting attorney of the county wherein the alleged violation arose, who *may*, in their discretion, with or without such a reference, *in addition to any other action* they might commence, *bring an action in the name of the state* against any person to restrain and prevent the doing of any act or practice prohibited by this chapter: *Provided,* That *this chapter shall be considered in conjunction with* chapters 9.04 and *19.86 RCW*, as now or hereafter amended, *and the powers and duties of the attorney general* and the prosecuting attorney *as they* may *appear in the aforementioned chapters, shall apply against all persons subject to this chapter.*

(Italics ours.) RCW 19.31.210.

█ There is no dispute but that employment agencies are extensively regulated by The Employment Agency Act, *i.e.,* RCW 19.31. Our prior decisions have held that if a business or business activity is regulated by other statutory provisions, then that business or business activity is exempt from the Consumer Protection Act. *See, e.g., Williamson v. Grant County Pub. Hosp. Dist.,* 65 Wn.2d 245, 396 P.2d 879 (1964); *Washington Osteopathic Medical Ass'n v. King*

any regulatory board or commission established within Title 18 RCW shall not be construed to be a violation of chapter 19.86 RCW. (Italics ours.) RCW 19.86.170. In view of the disposition made herein, we need not consider what impact this amendment will have with respect to rendering certain businesses exempt from the Consumer Protection Act.

*County Medical Serv. Corp.*, 78 Wn.2d 577, 478 P.2d 228 (1970); *Dick v. Attorney General*, 83 Wn.2d 684, 521 P.2d 702 (1974). Superficially, at least, this may seem to indicate that employment agencies are exempt from the Consumer Protection Act. But, the instant case involves a factor not present in any of our prior decisions: the regulatory statute involved herein, *i.e.*, The Employment Agency Act, contains an *additional provision* referring to the Consumer Protection Act and ostensibly making the Consumer Protection Act applicable to employment agencies. *See* RCW 19.31.210, *supra.* Therefore, the precise question for us to determine is whether the legislature intended RCW 19.31.210 to override the exemption provision in RCW 19.86.170 and to thereby place employment agencies within the purview of the Consumer Protection Act notwithstanding the fact that they are extensively regulated.

RCW 19.31.210 explicitly states that RCW 19.31 is to be "considered in conjunction with . . . 19.86 RCW" (the Consumer Protection Act) and that "the powers and duties of the attorney general and the prosecuting attorney as they may appear in [RCW 19.86 and RCW 9.04] shall apply against all persons subject to [RCW 19.31]." If this provision is to have any effect at all, we can perceive no other viable interpretation other than that the legislature intended to authorize the Attorney General to apply the powers he derives from RCW 19.86 (as well as from RCW 9.04) to employment agencies. We so hold.

This interpretation is solidly supported by the historical background pertinent to the enactment of RCW 19.31.210. The Consumer Protection Act—including its exemption provision contained in RCW 19.86.170—was enacted in 1961. In contrast, The Employment Agency Act—including RCW 19.31.210—was enacted 8 years later in 1969. Prior to 1969, employment agencies were obviously subject to the Consumer Protection Act because they were unregulated. In 1969, employment agencies became regulated with the enactment of The Employment Agency Act, but it does not follow that, ipso facto, they were to become exempt from

the Consumer Protection Act. On the contrary, the insertion of the *additional provision*, *i.e.*, RCW 19.31.210, into The Employment Agency Act is indicative of a legislative intent to insure that employment agencies would *continue* to be subject to the Consumer Protection Act.

The arguments offered by respondents in support of their position that the legislature did not intend to subject employment agencies to the Consumer Protection Act are unpersuasive and can be disposed of readily.

■ First, respondents contend that RCW 19.31.210 deals generally with the subject of what businesses are and are not subject to the Consumer Protection Act. In contrast, it is said that the exemption provision in the Consumer Protection Act, *i.e.*, RCW 19.86.170, constitutes specific treatment of this subject and under *Knowles v. Holly*, 82 Wn.2d 694, 513 P.2d 18 (1973), specific provisions must be given controlling effect. However, respondents have not articulated any justifiable reasons for attaching the label "specific" to RCW 19.86.170 and the label "general" to RCW 19.31.210. Indeed, two factors convince us that, if anything, RCW 19.31.210 should be deemed specific and RCW 19.86.170 should be deemed general: (1) RCW 19.31.210 was enacted *subsequent* to RCW 19.86.170; and (2) RCW 19.86.170 deals with the entire spectrum of businesses in the state of Washington, while RCW 19.31.210 concerns itself solely with employment agencies and the relevance of the Consumer Protection Act thereto.

■ Respondents' second argument is that the reference in RCW 19.31.210 to RCW 19.86 necessarily includes a reference to the exemption provision in RCW 19.86.170. Thus, respondents urge that employment agencies are exempt from the Consumer Protection Act pursuant to RCW 19.86.170 because they are regulated by RCW 19.31. Obviously, this is circular ratiocination, which renders completely *nugatory* the proviso in RCW 19.31.210 and contravenes the familiar rule of statutory construction that a statute should be construed to make it purposeful and effective rather than futile and meaningless. *See DeGrief v.*

*Seattle,* 50 Wn.2d 1, 297 P.2d 940 (1956). *Cf. Kelleher v. Ephrata School Dist. 165,* 56 Wn.2d 866, 355 P.2d 989 (1960).

■ Third, respondents suggest that even if the Consumer Protection Act is applicable to employment agencies, it can be so applied only if the Attorney General *first* files an action in the name of the State. But we do not find any language in RCW 19.31.210 supportive of such a conclusion. The proviso which grants to the Attorney General authority to apply the powers he derives from the Consumer Protection Act to employment agencies certainly contains no intimation that an action in the name of the State must first be filed. Indeed, RCW 19.31.210 makes clear that actions in the name of the State are totally discretionary because they *may* be commenced "in addition to any other action" that may be brought. Thus, there is no basis for concluding that "other actions" such as service of a civil investigative demand must be preceded by filing an action in the name of the State.

■ Finally, we note in passing that Const. art. 2, § 37 provides:

> Revision or Amendment. No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length.

The question was raised at oral argument as to whether RCW 19.31.210 might constitute an unconstitutional amendment to RCW 19.86 because RCW 19.86 is not "set forth at full length" in RCW 19.31.210. This point need not be considered by us since it was not presented in the briefs. *See* ROA I-43. Nevertheless, we are impelled to comment that we do not believe that this constitutional provision has been violated.

It is well established that Const. art. 2, § 37 is not violated when a complete act adopts by reference provisions of prior acts. *Naccarato v. Sullivan,* 46 Wn.2d 67, 278 P.2d 641 (1955); *Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 211 P.2d 651 (1949). The rationale for this rule has been articulated

in *State v. Rasmussen*, 14 Wn.2d 397, 402, 128 P.2d 318 (1942) (quoting from 25 R.C.L. 907, § 160):

"Statutes which refer to other statutes and make them applicable to the subject of the legislation are called 'reference statutes.' Their object is to incorporate into the act of which they are a part the provisions of other statutes by reference and adoption. Reference statutes are of frequent use to avoid encumbering the statute books by unnecessary repetition, and they have frequently been recognized as an approved method of legislation . . .

In the instant case, we are satisfied that RCW 19.31 is a complete act. Since it simply adopts by reference the provisions of the Consumer Protection Act, it has not violated Const. art 2, § 37.

The second issue for our determination is whether the civil investigative demand served upon respondents constitutes an unreasonable search and seizure. Respondents direct their challenge only at the alleged imprecision of this particular civil investigative demand and not generally at the statutory provisions allowing such investigative demands. Respondents' primary objection is to the somewhat broad statement in the investigative demand that it is investigating a

possible violation of RCW 19.86.020, having the following general subject matter; Unfair and deceptive practices in the operation of an employment agency.

(Civil Investigative Demand.) It is contended that this language is so broad as to place an impermissible amount of authority in the Attorney General to conduct a search based upon a bare suspicion. This, it is argued, is unreasonable.

■ In assessing respondents' contention, we start with the well-established proposition that although corporations and businesses are protected by the Fourth Amendment, *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182 (1920); *Hale v. Henkel*, 201 U.S. 43, 50 L. Ed. 652, 26 S. Ct. 370 (1906), the privacy of their

books and records is not as stringently protected as is that of the privacy of individuals. Indeed, both in England and in the United States, corporations and businesses historically have been subject to wide investigative powers. *See Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 204-06, 90 L. Ed. 614, 66 S. Ct. 494, 166 A.L.R. 531 (1946). The rationale for not affording to the records of businesses and corporations the same panoply of protections as that afforded to private citizens is most eloquently stated in *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 94 L. Ed. 401, 70 S. Ct. 357 (1950):

> While they may and should have protection from unlawful demands made in the name of public investigation, cf. *Federal Trade Comm'n v. American Tobacco Co.*, 264 U.S. 298, corporations can claim no equality with individuals in the enjoyment of a right to privacy. *Cf. United States v. White, supra* [322 U.S. 694, 88 L. Ed. 1542, 64 S. Ct. 1248]. They are endowed with public attributes. They have a collective impact upon society, from which they derive the privilege of acting as artificial entities. The Federal Government allows them the privilege of engaging in interstate commerce. Favors from government often carry with them an enhanced measure of regulation. [Citations omitted.] Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.

■ The somewhat limited protections of the Fourth Amendment, with respect to the production of business records pursuant to a subpoena or similar order authorized by law, have been summarized in *Oklahoma Press*, at page 208 as follows:

> [T]he Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be "particularly described," if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement,

expressed in terms, that the disclosure sought shall not be unreasonable.

Thus, contrary to respondents' argument, it seems clear that the touchstone of the reasonableness requirement of the Fourth Amendment with respect to the production of business records 'is not that the subpoena or order specify precisely the activity or transaction giving rise to the investigation. On the contrary, the test enunicated in *Oklahoma Press*, and reaffirmed in *Morton Salt*, for determining the reasonableness of a subpoena duces tecum or similar order focuses primarily on other factors and requires that (1) the inquiry is within the authority of the agency; (2) the demand is not too indefinite; and (3) the information sought is reasonably relevant. Of course, the general nature of the investigation must be identified so that it can be fairly ascertained if this three-pronged test has been met. But in the instant case, the civil investigative demand adequately specified the general nature of the investigation, *viz*. possible deceptive and unfair practices in the operation of an employment agency. Hence, we proceed to the more crucial consideration of whether the above three-pronged test has been complied with.

First, there is no question but that RCW 19.86.080 and RCW 19.86.110 (1) accord to the Attorney General power to investigate possible unfair or deceptive practices. Moreover, we have previously held in this opinion that employment agencies are not exempt from these provisions. Thus, it is clear that the inquiry was within the authority of the Attorney General.

Second, we do not believe that the demand in the instant case was impermissibly indefinite. There was no general or undiscriminating request for all business records. Rather, the types of records and information sought were in all instances explained with reasonable clarity. Moreover, no records were requested which were more than 3 years old. Under the case law, much broader demands than the one herein have been consistently upheld, particularly when the investigation was into the affairs of a corporation or

business. *See, e.g., Consolidated Rendering Co. v. Vermont,* 207 U.S. 541, 52 L. Ed. 327, 28 S. Ct. 178 (1908); *LaBelle Creole Int'l, S.A. v. Attorney General,* 10 N.Y.2d 192, 219 N.Y.S.2d 1, 176 N.E.2d 705 (1961); *In re Motions to Quash Subpoenas,* 30 F. Supp. 527 (S.D. Cal. 1939). *See also Mc-Phaul v. United States,* 364 U.S. 372, 5 L. Ed. 2d 136, 81 S. Ct. 138, *rehearing denied,* 364 U.S. 925, 5 L. Ed. 2d 264, 81 S. Ct. 282 (1960).

Third, we have no doubt that the records were reasonably relevant to the investigation of unfair and deceptive practices, since the requested information was directed at ascertaining the manner in which the employment agency filled supposed job openings and dealt with applicants seeking employment. Indeed, respondents themselves have not pointed to any *particular* aspect of the civil investigative demand that would not be relevant to unfair and deceptive practices.

Therefore, by application of the three-pronged test contemplated by *Oklahoma Press* and *Morton Salt,* we are convinced that the instant civil investigative demand did not violate the prohibitions of the Fourth Amendment. Situations could, of course, arise where the Attorney General arbitrarily serves a civil investigative demand upon a business. In such a case, the supplicant is authorized by RCW 19.86.110(7) to petition the appropriate superior court and, upon a showing of good cause, the investigative demand may be set aside. But the record in the instant case discloses that the Attorney General did not act arbitrarily in instituting the investigation. On the contrary, the record discloses that an adequate foundation for the investigation existed since the Attorney General had received various complaints with respect to the operation of the employment agency.

The result reached herein affords the Attorney General some latitude in embarking upon investigations without absolute assurances that violations of the Consumer Protection Act have occurred. But this authority seems well established in view of *Oklahoma Press* and *Morton*

*Salt,* and it is further buttressed by the more recent code enforcement inspection cases holding that an inspector need not have probable cause to believe that a particular building has violated the pertinent code in order to conduct an inspection therein. *See Camara v. Municipal Court,* 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967); *See v. Seattle,* 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967). Moreover, the federal courts have constantly held that the Fourth Amendment is not violated by service of a civil investigative demand upon corporations to investigate possible antitrust violations. *Petition of Gold Bond Stamp Co.,* 221 F. Supp. 391 (D. Minn. 1963), *aff'd,* 325 F.2d 1018 (8th Cir. 1964); *Hyster Co. v. United States,* 338 F.2d 183 (9th Cir. 1964); *Material Handling Institute, Inc. v. McLaren,* 426 F.2d 90 (3d Cir. 1970), *cert. denied,* 400 U.S. 826, 27 L. Ed. 2d 55, 91 S. Ct. 50 (1970).

In summary, we hold that (1) employment agencies are subject to the provisions of the Consumer Protection Act; and (2) the civil investigative demand served upon respondents did not constitute an unreasonable search and seizure in violation of the Fourth Amendment.

For the foregoing reasons, the judgment of the superior court should be reversed. It is so ordered.

STAFFORD, C.J., and HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

ROSELLINI, J., concurs in the result.